UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT

| | | |
|---|---|---|
| Charles Marceline, | : | |
| Kimberly Marceline, | : | |
|     PLAINTIFFS, | : | |
| | : | CIVIL ACTION NO. 3:09cv1591(VLB) |
| | : | |
|     v. | : | June 23, 2011 |
| | : | |
| Miriam Delgado, a Stamford Police | : | |
| Officer, | : | |
|     DEFENDANT. | : | |

## MEMORANDUM OF DECISION DENYING IN PART AND GRANTING IN PART DEFENDANT'S [DOC. #24] MOTION FOR SUMMARY JUDGMENT

Before the Court is a motion for summary judgment filed by the Defendant, Miriam Delgado, a Stamford Police Officer ("Delgado"). The Plaintiffs, Charles Marceline and Kimberly Marceline brought this suit pursuant to 42 U.S.C. § 1983 alleging violations of due process, equal protection, and their rights to be free from unreasonable search and seizure, under the Fifth, Fourteenth, and Fourth Amendments respectively. In addition, Plaintiffs also assert claims for false arrest, false imprisonment, intentional infliction of emotional distress, malicious prosecution, and "tortious interference with a 911 Telephone call." Delgado moves for summary judgment on all counts of Plaintiffs' complaint arguing that Plaintiffs have failed to set forth sufficient evidence for a reasonable jury to find that Delgado's actions violated the Fourth, Fifth or Fourteenth Amendments or constituted an intentional infliction of emotional distress as her behavior was objectively reasonable and based on probable cause. Furthermore, Delgado argues that since she did not formally arrest Plaintiffs or in the alternative that

1

her actions were based on probable cause that she cannot be held liable for false arrest, false imprisonment, or malicious prosecution.  Lastly, Delgado asserts that she is entitled to qualified immunity.  For the reasons stated hereafter, Defendant's motion for summary judgment is granted as to Plaintiffs' false arrest, false imprisonment, tortious interference with a 911 call, due process, and equal protection claims, but denied as to Plaintiffs' Fourth Amendment excessive force and intentional infliction of emotional distress claims.

<u>Facts</u>

The following facts relevant to Defendant's motion for summary judgment are undisputed unless otherwise noted.  On Saturday, May 16, 2009 shortly after 7am, Charles Marceline was driving his vehicle which was pulling a motorcycle trailer on highway I-95 North.  Charles Marceline's daughter Kimberly Marceline, age 17 at the time, was a passenger in his vehicle.  Defendant Miriam Delgado, a Stamford Connecticut police officer in the detective bureau at the time, was also driving on I-95 North on her way into work.  [Doc.# 24-1].   At the time, Delgado was driving her own car and not a police car and was off-duty.  She was wearing a Stamford Police Department golf shirt, but was not dressed in an official police uniform.  [*Id.*].

Shortly after 7:00 a.m. and around Exit 2 on I-95, Delgado noticed Plaintiffs' vehicle traveling approximately 60 to 65 miles per hour in an area where the posted speed limit was 55 miles per hour.  Charles Marceline had moved his vehicle into the left hand lane in an attempt to pass a semi-truck that was driving

in the center lane.  Delgado alleges that she noticed Plaintiff's vehicle because he was "traveling at a high rate of speed and when he switched lanes the empty trailer he was pulling swerved back and forth."  [Doc. #24-1].  Charles Marceline disputes that he was traveling at a high speed or that his trailer was swerving back and forth and instead alleges that he was traveling at the normal speed of traffic.  [Doc.#31-1].

Between Exits 3 and 4, Delgado, whose car was in the middle lane, was able to pull up along-side of Plaintiffs' vehicle which was in the center lane.  At that point, Delgado alleges that she showed Plaintiffs her badge and gestured for them to slow down. [Doc.# 24-1].  Plaintiffs allege that Delgado, who was trailing their vehicle during this time, caused them to drive dangerously close to the center median and that Delgado was holding something that appeared to be a badge and was making some gestures. [Doc. # 31-1, Attach 4, Ex. 3, Charles Marceline Depo. p. 32].  In response, both Charles and Kimberly Marceline made an obscene hand gesture at Delgado.  [Id.].  Delgado then radioed Stamford Dispatch at 7:22 am to report Charles Marceline as an erratic driver.  She radioed dispatch again at 7:25 am and was told that the "State police were already aware of a road rage incident involving that vehicle."  [Doc.#24-1].

Delgado then sped up and pulled in front of Plaintiffs' vehicle in the left hand lane and dramatically slowed down.  [Doc.#24-1].  Plaintiffs specifically allege that Delgado was enraged and pulled in front of them immediately after they gave her the finger and slowed down to approximately 20 miles per hour almost causing them to rear-end her.  [Doc.#31-1, Attach 4, Ex. 3, Charles

3

Marceline Depo. p. 36].  By this point, Charles Marceline had called 911 for help and to report Delgado's erratic driving.  In fact, other motorists on I-95 that morning had also called 911 to report on Delgado's erratic driving.  [Doc.#31-1, Attach 8, Ex. 6 - 911 Transcripts].   Plaintiffs then exited I-95 at Exit 12 upon the advice of the 911 operator and pulled into the parking lot of the Darien Firehouse. [Doc.#31-1, Attach 2, Ex. 1, Affidavit of Kimberly Marceline, paragraph 16].  Since Delgado had been traveling in front of plaintiffs' vehicle she was beyond the exit 12 ramp by the time she realized that Plaintiffs had exited and therefore had to back up to get off I-95 to follow Plaintiffs into the Firehouse parking lot.  [Doc.# 24-1].

Charles Marceline had already gotten out of his car when Delgado arrived in the parking lot and began swearing and directing profanities at her.  Delgado ordered Charles Marceline to put his hand on the car and to step back.  Delgado contends that Charles Marceline would take one step back and one step towards her again.  [Doc.# 24-1].  Kimberly Marceline then exited the car holding a cell phone (as she was still speaking with 911) and Delgado pointed her gun at Kimberly and ordered her to drop what she was holding.  [Doc.# 24-1].  Plaintiffs allege that Kimberly Marceline told Delgado that she was calling the police to which Delgado responded "I am the police.  Hang up the phone."  [Doc. # 31-1, Attach 3, Ex.2, Kimberly Marceline Depo. p. 11].  Plaintiffs allege that Delgado had her firearm drawn throughout the entire encounter in the parking lot and only reholstered it when both Plaintiffs had exited the car and had their hands up against their vehicle.  [Doc.# 31-4, Ex. 3, Charles Marceline Depo. p. 40].  =,

4

Delgado admits she only briefly drew her firearm when Kimberly Marceline exited the car but states that she reholstered it when she ascertained that Kimberly Marceline was only holding a cell phone. [Doc.# 24-1].

Moments later, the Darien Police and the Connecticut State Police arrived to find Plaintiffs with their hands against the side of their vehicle and Delgado with her gun reholstered. [Doc.# 31-1, Attach9, Ex. 7, Darien Police Report, p.2]. Officer Benedetto of the Darien Police then walked Charles Marceline away from his vehicle and Delgado removed herself from the scene at that point. [Doc.# 24-1]. While Officer Benedetto was speaking with Charles Marceline he detected the odor of marijuana. Charles Marceline admitted to Officer Benedetto that he had smoked marijuana that day. A Connecticut State Police K-9 then searched Plaintiffs' vehicle and detected contraband. Charles Marceline was charged with reckless driving, possession of drug paraphernalia, and possession of less than four ounces of marijuana. Kimberly Marceline was not charge with any offense or violation. [Doc.# 24-1].

<u>Standard</u>

Summary judgment should be granted "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). The moving party bears the burden of proving that no factual issues exist. *Vivenzio v. City of Syracuse*, 611 F.3d 98, 106 (2d Cir. 2010). "In determining whether that burden has been met, the court is required to resolve all ambiguities and credit all factual inferences that could be

drawn in favor of the party against whom summary judgment is sought." *Id.*, (citing *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255 (1986); *Matsushita Electric Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986)).  "If there is any evidence in the record that could reasonably support a jury's verdict for the non-moving party, summary judgment must be denied."  *Am. Home Assurance Co. v. Hapag Lloyd Container Linie, GmbH*, 446 F.3d 313, 315-16 (2d Cir. 2006) (internal quotation marks and citation omitted).

### <u>Analysis of False Arrest and False Imprisonment Claims</u>

Under Connecticut law, "'[f]alse imprisonment, or false arrest, is the unlawful restraint by one person of the physical liberty of another,'" *Russo v. City of Bridgeport*, 479 F.3d 196, 204 (2d Cir. 2007) (*quoting Outlaw v. City of Meriden*, 43 Conn. App. 387, 392 (1996)).  The applicable law for false arrest and false imprisonment is identical and accordingly the Court will address these causes of action jointly.  *Id.*  Delgado argues that since she did not formally arrest either Charles Marceline or his daughter Kimberly, she cannot be liable for false arrest or imprisonment.   In particular, Delgado reasons that Kimberly Marceline was never arrested as she was never charged with any offense or violation; whereas, Charles Marceline, who was formally charged with an offense, was instead arrested by the Darien and State Police when they arrived at the scene and not Delgado.  However, a formal arrest is not necessary to sustain a cause of action for false arrest.  *Russo v. City of Hartford*, 184 F.Supp.2d 169, 179 (D.Conn. 2009) ("The confinement may be by taking a person into custody under an asserted legal authority") (*quoting Green v. Donroe*, 186 Conn. 265, 267 (1982)).  Moreover,

it is well established that an investigative stop can ripen into a de facto arrest. *U.S. v. Vargas*, 369 F.3d 98, 102 (2d Cir. 2004) (holding that "[i]n determining whether an investigatory stop is sufficiently intrusive to ripen into a *de facto* arrest, the Second Circuit considers the amount of force used by the police, the need for such force, and the extent to which an individual's freedom of movement was restrained, and in particular such factors as the number of agents involved, whether the target of the stop was suspected of being armed, the duration of the stop, and the physical treatment of the suspect, including whether or not handcuffs were used.") (internal citation and quotation marks omitted). Accordingly, the fact that Delgado herself did not formally arrest Charles Marceline or that Kimberly Marceline was never formally charged with any offense does not preclude the Court from finding that Delgado's actions constituted false arrest or imprisonment.

Delgado, in the alternative, argues that the false arrest and imprisonment claims should be barred on the basis that she had probable cause to make the traffic stop.  It is well established that probable cause is a complete defense to an action for false arrest.  *Russo v. City of Bridgeport*, 479 F.3d at 203.  The Supreme Court has held that "[a]n automobile stop is [] subject to the constitutional imperative that it not be "unreasonable" under the circumstances.  As a general matter, the decision to stop an automobile is reasonable where the police have probable cause to believe that a traffic violation has occurred." *Whren v. U.S.*, 517 U.S. 808, 810 (1996); *see also Cooper v. City of Hartford*, No. 3:07-cv-823, 2009 WL 2163127, at *8 n.8 (D.Conn. July 21, 2009) (holding that "[s]tanding alone,

reasonable suspicion that the operator of a motor vehicle has committed a traffic violation can provide justification for a motor vehicle stop," and that a vehicle traveling at a high rate of speed even if not violating any traffic laws can weigh in favor of a finding of reasonable suspicion).  Plaintiffs do not dispute that they were traveling 60-65 miles per hour in a 55 mile per hour zone, and that Delgado witnessed them driving above the speed limit.   [Doc.# 31-1].   Accordingly, Delgado had probable cause to believe a traffic violation had occurred.  Delgado has therefore provided sufficient evidence to establish a defense against false arrest or false imprisonment and her motion for summary judgment as to these claims is granted.

### Analysis of Malicious Prosecution Claims

Delgado also argues that she is entitled to summary judgment as to Plaintiffs' malicious prosecution claims as there is no evidence of malice, Plaintiff's criminal proceedings did not terminate in his favor, she did not institute any criminal proceedings against Plaintiffs, and that she had probable cause in connection with the traffic stop.  Like claims for false arrest, probable cause is also a complete defense to a malicious prosecution claim.  *Bauer v. City of Hartford*, No. 3:07-cv-1375, 2010 WL 4429697, at *6 (D.Conn. Oct. 29, 2010).   As explained previously, Delgado had probable cause to believe that Plaintiffs had committed a traffic violation and therefore Plaintiffs' claim for malicious prosecution is barred.  Defendant's motion for summary judgment as to Plaintiffs' malicious prosecution claims is therefore granted.

**Analysis of Fourth Amendment Excessive Force Claim**

Plaintiffs also argue that Delgado's conduct in executing the traffic stop violated the Fourth Amendment's mandate against unreasonable searches and seizures.[1]  In particular, Plaintiffs argue that Delgado used excessive force through her conduct while driving and through the use of her firearm to detain Plaintiffs for a minor traffic violation.  Defendant contends that her conduct was reasonable, not extreme or outrageous and based on probable cause.  The existence of probable cause does not preclude a claim for excessive force under the Fourth Amendment.  *Ferreira v. Westchester County*, 917 F. Supp. 209, 218 (S.D.N.Y. 1996); *See also Wren*, 517 U.S. at 818 (finding that when probable cause exists, "the only cases [in] which we have found it necessary to actually perform the [Fourth Amendment] 'balancing' analysis involved searches and seizures conducted in an extraordinary manner").  The Court will examine the nature of the Delgado's conduct.

---

[1] The Plaintiffs' brief appears to suggest that the search was unreasonable since Delgado as an off-duty officer was out of her jurisdiction and did not have legal authority under Conn. Gen. Stat. §54-1f(b)-(c) to arrest Plaintiffs for a traffic violation.  Conn. Gen. Stat. §54-1f(b)-(c) provides that members of any local police department shall arrest, without previous complaint and warrant, any person who the officer has reasonable grounds to believe has committed or is committing a felony and provides authorization to pursue that offender outside of their precincts.  Plaintiffs argue the statute only authorizes off-duty officers acting outside of their precincts to arrest an individual for a felony and not a traffic violation.  However as the Defendant points out, Connecticut Courts have interpreted the grant of authority under Conn. Gen. Stat. §54-1f(b)-(c) to cover traffic violations.  *State v. Harrison*, 228 Conn. 758, 764-65 (1994).  In addition, an off-duty officer can act under the color of law.  Rivera v. La Porte, 896 F.2d 691, 696 (2d Cir. 1990) (holding that the "off-duty status of an arresting officer does not mean that he is not acting under the color of the law.").

Claims that a law enforcement official used excessive force during a seizure, including an arrest or investigatory stop, are analyzed under the Fourth Amendment's "objective reasonableness" standard.   Accordingly, a court must balance "the nature and quality of the intrusion on the individual's Fourth Amendment interests against the countervailing governmental interests at stake." *Graham v. Connor*, 490 U.S. 386, 396 (1989) (citation and internal quotation marks omitted).  A court must examine: "the facts and circumstances of each particular case, including the severity of the crime at issue, whether the suspect poses an immediate threat to the safety of the officers or others, and whether he is actively resisting arrest or attempting to evade arrest by flight." *Id.* (citation omitted). Further, reasonableness must be judged objectively under the circumstances, "from the perspective of a reasonable officer on the scene," and allow for the fact "that police officers are often forced to make split-second judgments-in circumstances that are tense, uncertain, and rapidly evolving-about the amount of force that is necessary in a particular situation." *Id.* at 396-97.  Applying the "objectively reasonable" standard as articulated in *Graham* and viewing the facts in the light most favorable to the non-moving party, a reasonable juror could find there was an intrusion on Plaintiffs' right to be free from an unreasonable seizure, while the countervailing government interest at stake was minimal in comparison.

Plaintiffs argue that it was objectively unreasonable for an off-duty officer who was traveling in her personal car and not even dressed in a standard police uniform and therefore was not clearly identifiable as a police officer to attempt to forcibly stop Plaintiffs' vehicle while traveling at 65 miles per hour on a heavily

trafficked highway while operating her personal unmarked vehicle and wearing ostensibly civilian clothing.  It is clear that Plaintiffs were not aware that Delgado was a police officer throughout the entire encounter.   Moreover, it is not surprising to the Court that when Delgado flashed her badge through the window of her civilian car, dressed in essentially civilian clothing that Plaintiffs did not recognize that Delgado was a legitimate police officer.

Plaintiffs further argue that Delgado employed excessive force by driving recklessly in the attempt to force Plaintiffs' vehicle off the highway.   Plaintiffs emphasize that Delgado's driving created a dangerous situation on I-95 for both innocent bystanders and Plaintiffs.   Delgado trailed Plaintiffs' car for several miles, from Exit 2 to Exit 12 on I-95, and at several points caused Plaintiffs' car to drive dangerously close to the median.  [Doc. #31-1].  In addition, when Delgado was not able to get Plaintiffs to pull over on the highway through gesturing and flashing her badge, she decided to forcibly try to stop Plaintiffs by speeding ahead of their car, moving into their lane and slamming on her brakes.  [Doc.#31-1, Attach 4, Ex. 3, Charles Marceline Depo. p. 36].  By dramatically slowing down on a busy highway, Delgado almost caused a serious accident involving multiple cars.  [*Id.*].

Delgado's conduct while on I-95 was so alarming to Plaintiffs, that they called 911 while on the highway to seek help and find refuge.  In particular, Charles Marceline told the 911 operator that "I have this lady…she is trying to run me off the road… I'am afraid to drive… I'm gonna get killed here."  [Doc.#31-1, Attach 8, Ex. 6 - 911 Transcripts].  In fact, Delgado's conduct on the highway

prompted other drivers on I-95 to independently call 911 to report the incident. One driver reported to 911 that "[t]here's a ah, a woman in a ah, white, a ah I'm sorry in a ah, a blue car playing games with a truck pulling ah a trailer, she slammed on her breaks, and I almost reared ended the both of them in an 18 wheeler." [*id.*].

Plaintiffs further argue that Delgado's unreasonable actions escalated when she decided to follow Plaintiffs off I-95 at Exit 12 and detain them at gunpoint. Delgado admittedly passed exit 12, but when she realized Plaintiffs had exited the highway, she stopped and backed up on I-95 to reach the Exit 12 ramp and pursued the Plaintiffs. [Doc.# 24-1]. Delgado then followed Plaintiffs into the Darien Fire Department parking lot where Plaintiffs had sought refuge upon the advice of the 911 operator they were communicating with. [*id.*].

Plaintiffs allege that Delgado had her gun drawn and pointed at Plaintiffs as she exited her car, yelling at Plaintiffs to put their hands up against the car and only reholstered her gun when both Plaintiffs were capitulated and secured with their hands against their car. [Doc.# 31-4, Attach 4, Ex. 3, Charles Marceline Depo. p. 40]. Although, Delgado disputes this account and claims that she only had her gun drawn briefly when Kimberly Marceline exited the car holding an item and when she realized the item was a cell phone she reholstered her gun. [Doc.# 24-1]. Accordingly, the Court finds there is a disputed issue of material fact regarding the length of time that Delgado had her firearm drawn. However, since the Court must view the facts in the light most favorable to the non-moving party and since Defendant has not provided sufficient evidence to conclusively

establish that she only briefly drew her firearm, the Court must credit Plaintiffs' account for purposes of its summary judgment analysis.   In addition, Plaintiffs point to evidence which supports their account that Delgado had her firearm drawn for a significant period of time: the Darien Police report of the incident notes that the police were responding not to a request by Delgado for back-up, but instead to a report that a woman was pointing a firearm at another woman in the fire department parking lot.  [Doc.# 31-1, Attach9, Ex. 7, Darien Police Report, p.2].

If Plaintiff's account is correct and Delgado exited her car with her firearm drawn, Delgado admits that she did not fear for her own safety while Charles Marceline was yelling profanities at her and taking what she characterizes as one step back and then one step forward.  [Doc.# 24-1].  She claims she was only concerned when Kimberly Marceline exited the car holding her cell phone which she at first thought might be a weapon.  [*id.*].  However a jury could reasonably credit Plaintiffs' account that Delgado had her firearm drawn the entire time, that Delgado did not fear for her safety when she drew her weapon or at any point during the encounter and therefore unreasonably had her firearm drawn.  *Baker v. Monroe Township*, 50 F.3d 1186, 1193 (3d Cir. 1995) (noting that continued detention at gunpoint where there was no reason to feel threatened or to fear suspects would escape could be unreasonable); *Robinson v. Solano County*, 278 F.3d 1007, 1015 (9th Cir. 2002) (finding that "brandishing a cocked gun…[lays] the building blocks for a section 1983 claim" even in the absence of physical injury); *See also*, *Holland v. Harrington*, 268 F.3d 1179, 1191 (10th Cir. 2001) ("The display

of weapons, and the pointing of firearms directly at persons inescapably involves the immediate threat of deadly force. Such a show of force should be predicated on at least a perceived risk of injury or danger to the officers or others, based upon what the officers know at that time.").

Delgado, on the other hand, argues that her actions were necessary and reasonable as she claims that Plaintiffs were not only speeding but driving recklessly and thereby endangering the public as their trailer was dangerously swerving back and forth.  However, Plaintiffs, although admittedly traveling 5-10 miles over the posted speed limit, dispute Delgado's account and point to the fact that other drivers on I-95 that morning called 911 not to report their driving, but instead to report Delgado's reckless conduct.  [Doc.# 31-1].  Therefore, the Court finds there is a disputed issue of material fact as to whether Plaintiffs were recklessly driving and whether Delgado's reaction was proportional.  Again, viewing the facts in the light most favorable to the non-moving party, a reasonable juror could find that Plaintiffs were not recklessly driving that morning and that Delgado overreacted.

Assuming that Plaintiffs were not recklessly driving or seriously endangering the lives of other drivers on I-95, the Government interest implicated here is the interest in ensuring that traffic laws are obeyed and that roads and highways are safe.  However, the Court is not persuaded that the Government's interest in stopping individuals driving only 5-10 miles per hour over the speed limit is of such significant import to justify what essentially was a high-speed chase on a heavily trafficked highway that actually endangered the

14

public safety and ultimately ended with an officer detaining two individuals at gunpoint who had no idea that they had been pulled over by a real police officer.

Moreover, none of the additional factors the Supreme Court in *Graham* highlighted would likely support a finding that the use of force exercised by Delgado, first through her conduct driving and second through the use of her firearm in detaining Plaintiffs was justified.  A reasonable juror could conclude that given the fact that the "crime at issue" was only a minor traffic violation that her attempt to force Plaintiffs off the road and detain them at gunpoint was unjustified.  *Odam v. Matteo*, No.3:08-cv-1569, 2011 WL 283946, at *8 (D.Conn. 2011) (finding that an officer's use of force to effectuate an arrest for committing traffic violations was unjustified as a reasonable juror could conclude that the officer did not fear for his safety and considering the lack of severity of the offense); *Bryan v. MacPherson*, 630 F.3d 805, 828 (9th Cir. 2010) ("[t]raffic violations generally will not support the use of a significant level of force.").

In addition, a reasonable juror could also conclude that Plaintiffs were not posing an immediate threat to Delgado or others nor were Plaintiffs actively resisting or attempting to evade arrest.  As noted previously, Plaintiffs dispute Delgado's account that their driving was posing a serious safety risk to others.  Instead, Plaintiffs present evidence that it was Delgado's driving that was presenting the risk to public safety.  In addition, there is little evidence to support a finding that Delgado reasonably feared for her safety when she followed Plaintiffs into the fire department parking lot and drew her firearm.  Likewise, a reasonable juror could conclude that since Plaintiffs were clearly unaware that

Delgado was a legitimate police officer, they could not have been evading arrest. On the contrary, Plaintiffs were actually communicating with the 911 operator the entire time they were allegedly evading Delgado and therefore they were attempting to contact the police – not evade them.

The Court is mindful that in a recent Supreme Court decision, the Supreme Court found that a police officer who ended a high-speed car chase by ramming his bumper into the suspects' car causing the suspect to crash and become severely injured did not use excessive force resulting in a Fourth Amendment violation. *Scott v. Harris*, 550 U.S. 372 (2007).  However the facts of that case are inapposite to the present case.  The Supreme Court reasoned that the officer's behavior was reasonable since the suspect had intentionally "placed himself and the public in danger by engaging in a reckless, high-speed flight that ultimately produced the choice between two evils that [the officer] confronted. Multiple police cars, with blue lights flashing and sirens blaring, had been chasing respondent for nearly 10 miles, but [the suspect] ignored their warning to stop. By contrast, those who might have been harmed had [the officer] not taken the action he did were entirely innocent." *Id.* at 384.  Viewing the facts in the light most favorable to the non-moving party, a reasonable juror could conclude that Plaintiffs did not intentionally place themselves or the public in danger by purposefully fleeing from the police.  Assuming that Plaintiffs were not in fact driving recklessly, they posed no threat whatsoever to the public safety and therefore this was not a situation where Delgado had to confront any "evils." The Supreme Court specifically rejected the argument that safety could have

16

been ensured if the police ceased their pursuit reasoning that it was unlikely the suspect would stop driving recklessly the minute the chasing police cars dropped away. *Id.* at 385.  However, in the present case, if Delgado had simply ceased pursuit or never gave pursuit in the first place, there would have been no less jeopardy to the public safety.  Importantly, the Plaintiffs here were not even aware that they were even being chased by the police in the first place unlike the suspect in *Scott*.  In *Scott*, it was the grave and imminent danger posed to innocent motorists that justified the officer's use of force.  In the present case viewing the facts in the light most favorable to the non-moving party, a reasonable juror could conclude there was no corresponding danger posed by Plaintiffs' conduct that would likewise justify Delgado's use of force.

The Court also acknowledges that courts within the Second Circuit have been reluctant to find an excessive force claim where there is no physical contact present. *See Easton v. City of New York*, No. 05-cv-1873, 2009 WL 1767725, at *4 n.5 (E.D.N.Y. June 23, 2009).  However, other circuits have recognized excessive-force claims in the absence of physical contact, particularly in cases where, as here, there were allegations that officers unreasonably drew their firearms. *See, e.g., Cortez v. McCauley*, 478 F.3d 1108, 1131 (10th Cir. 2007) (finding "[p]hysical contact is not required for an excessive force claim-patently unreasonable conduct is."); *Snoussi v. Bivona*, No. 05 CV 3133, 2008 WL 3992157 at *6 (E.D.N.Y. Aug. 22, 2008) (collecting out-of-circuit decisions and acknowledging that there is disagreement over whether or not the threat of force without more can constitute excessive force).  Notably, the Tenth Circuit has held that the Supreme Court in

17

*Graham* acknowledged that physical touching was not a requirement for excessive force claims. *Martin v. Board of County Com're of County of Pueblo*, 909 F.2d 402, 406 (10th Cir. 1990).  The Tenth Circuit points to the language in *Graham* which establishes that a "seizure…occurs only when government actors have, by means of physical force *or show of authority*, … in some way restrained the liberty of a citizen."  *Id.* (*quoting Graham*, 490 U.S. at 395 n.10).  In addition, the Tenth Circuit reasoned that "[p]hysical contact is similarly not required to demonstrate the unreasonableness of the force used to effect a particular seizure. 'Fourth Amendment jurisprudence has long recognized that the right to make an arrest or investigatory stop necessarily carries with it the right to use some degree of physical coercion *or threat thereof* to effect it.'" *Martin*, 909 F.2d at 406, (*quoting Graham* 490 U.S. at 396).  The Court finds the Tenth Circuit's reasoning persuasive and accordingly the Court does not view the lack of physical contact between Plaintiffs and Delgado as detrimental to Plaintiffs' claim for excessive force.  In addition, the Court notes that the Supreme Court in *Scott* did not address the issue of lack of physical conduct and therefore assumed that the defendant's conduct while driving could potentially result in excessive force.

Lastly, the Court finds the facts and holding of *Oliver v. Cuttler*, 968 F.Supp. 83 (E.D.N.Y. 1997) particularly relevant to the present case.  In *Oliver*, an off-duty officer on his motorcycle tail-gated plaintiff for several miles on a highway and then followed the plaintiff off the exit ramp.  When the two vehicles were stopped at a red light, the plaintiff alleged that the defendant officer got off his motorcycle without identifying himself and then "in the absence of any

provocation or wrongdoing by the plaintiff, pointed a gun to his head, kicked him in his legs, causing him to fall." *Id.* at 88. When uniformed police officers arrived at the scene a short time later, the plaintiff was arrested for reckless driving. In *Oliver*, the court found that Plaintiff had established a claim for excessive force. *Id.* Like in *Oliver*, the court is confronted here with an off-duty officer arresting an individual for a minor traffic violation where the individual had no awareness that the off-duty officer was in fact a legitimate police officer and forcibly attempting to stop plaintiff's vehicle while traveling above the speed limit and finally brandishing a lethal weapon to effect a traffic stop for exceeding the speed limit by 5-10 miles per hour.

Therefore, viewing the facts in the light most favorable to the non-moving party and acknowledging that there are genuine issues of material fact in dispute, a reasonable juror could find that Delgado's conduct constituted excessive force in violation of the Fourth Amendment and therefore Defendant's motion for summary judgment with respect to  Plaintiffs' Fourth Amendment claim is denied.

<u>Analysis of Substantive Due Process and Eighth Amendment Claims</u>

Plaintiffs allege that Delgado's conduct resulted in a violation of their substantive due process rights as it was so extreme and outrageous that it shocked the conscious. However, the Supreme Court has explicitly ruled that "all claims that law enforcement officers have used excessive force – deadly or not – in the course of an arrest, investigatory stop, or other 'seizure' of a free citizen should be analyzed under the Fourth Amendment and its 'reasonableness'

standard, rather than under a 'substantive due process' approach."  *Graham,* 490 U.S. at 395.  Accordingly, since Plaintiffs' claims center on Delgado's conduct in seizing Plaintiffs, such claims must be brought under the Fourth Amendment. Defendant's motion for summary judgment as to Plaintiffs' substantive due process claim is therefore granted.

Plaintiffs also summarily allege in their complaint that there was a violation of their rights as secured by the Eighth Amendment but do not allege anything more with respect to the Eighth Amendment.   As noted, Plaintiffs' allegations center on Delgado's actions in seizing Plaintiffs and therefore under *Graham* must be analyzed under the Fourth Amendment.  To the extent that Plaintiffs are asserting a cause of action under the Eighth Amendment, Defendant's motion for summary judgment as to such claims is granted.

<u>Analysis of Equal Protection Claim</u>

Plaintiffs in their complaint summarily allege that they were deprived of equal protection of the law.  [Doc.#1].   However one Plaintiff is male, the other female; one is relatively young the other relatively old.  There are no allegations that either of them is a member of a protected class or that they were treated differently than other similarly situated individuals.  *Lawrence v. Texas*, 539 U.S. 558, 579 (2003)(holding that the "Equal Protection Clause of the Fourteenth Amendment is essentially a direction that all persons similarly situation should be treated alike.") (internal citation and quotation marks omitted).  Since Plaintiffs have not presented any evidence whatsoever to support finding an equal

protection violation, Defendant's motion for summary judgment as to Plaintiffs' equal protection claims is granted.

### Analysis of "Tortious Interference with a 911 Call"

Plaintiffs assert a claim for "tortious interference with a 911 call" and point to Conn. Gen. Stat. § 53a-183b which provides criminal liability for interfering with an emergency call.  However, Plaintiffs cite to no authority which establishes there is a private right of action under Conn. Gen. Stat. § 53a-183b; nor has the Court identified any Connecticut authority to support the same.  Instead, Plaintiffs suggest that the First Amendment supports finding a private right of action here. However, Plaintiffs admit that there is no caselaw directly on point to support a First Amendment claim under these circumstances.  The Second Circuit has further instructed courts that "in the absence of any guidance from state courts, federal courts are hesitant to imply private [civil] rights of action state criminal statutes."  *Watson v. City of New York*, 92 F.3d 31, 36 (2d Cir. 1996) (citation omitted).  Defendant's motion for summary judgment is therefore granted as to the claim for "tortious interference with a 911 call."

### Analysis of Intentional Infliction of Emotional Distress

Delgado moves for summary judgment as to Plaintiffs' intentional infliction of emotional distress claim arguing that her conduct was not outrageous or extreme.  Under Connecticut law, in order to succeed on an intentional infliction of emotional distress claim, Plaintiff must establish "(1) that the actor intended to inflict emotional distress or that he knew or should have known that the

emotional distress was a likely result of his conduct; (2) that the conduct was extreme and outrageous; (3) that the defendant's conduct was the cause of the plaintiff's distress; and (4) that the distress suffered by the plaintiff was severe." *Appleton v. Stonington Bd. Of Ed.*, 254 Conn. 205, 210 (2000) (citation omitted).  In addition, "[w]hether a defendant's conduct is sufficient to satisfy the requirement that it be extreme and outrageous is initially a question for the court to determine. Only where reasonable minds disagree does it become an issue for the jury." Id. (citation omitted).

Plaintiffs argue that Delgado's conduct in trying to force them off the highway and detaining them at gunpoint without justification while off-duty and not clearly identifiable as a police officer was extreme and outrageous.  Plaintiffs point to the 911 transcripts as evidence that Delgado's conduct caused them to suffer severe distress and note that Plaintiff Kimberly Marceline was hysterically crying throughout the encounter as she believed that her life and her father's life was in danger. [Doc.#31-1, Attach 2, Ex. 1, Affidavit of Kimberly Marceline, paragraph 19; Attach 3, Ex.2, Kimberly Marceline Depo. p. 34; Attach 8, Ex. 6 - 911 Transcripts].  Courts have routinely held that the "use of excessive force can establish a claim for intentional infliction of emotional distress." *Frappier v. City of Waterbury*, 3:07-cv-1457, 2008 WL 4980362, at *3 (D.Conn. Nov. 20, 2008); *Brown v. Catania*, No.3:06cv73, 2007 WL 879081, at *10 (D.Conn. March 21, 2007); *McKelvie v. Cooper*, 190 F.3d 58, 63 (2d Cir. 1999); *Zainc v. City of Waterbury*, 603 F.Supp. 2d 368, 392 (D.Conn. 2009).  Accordingly, as there are genuine issues of material fact that preclude summary judgment on Plaintiffs' excessive force

claim, the Court likewise denies Defendant's motion for summary judgment on Plaintiffs' intentional infliction of emotional distress claim.

**Qualified Immunity**

Delgado argues that she entitled to qualified immunity as Plaintiffs have not adequately alleged a constitutional violation since Delgado had probable cause to make a vehicle stop and that it was objectively reasonable for Delgado to briefly draw her firearm when she spotted Plaintiff Kimberly Marceline holding something as she exited the car.  Qualified immunity protects a "government official acting in an official capacity from suit for damages under § 1983 unless the official violated clearly established rights of which an objectively reasonable official would have known."  *Blouin ex rel. Estate of Pouliot v. Spitzer*, 356 F.3d 348, 358 (2d Cir. 2004); see also *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982).  In *Saucier v. Katz*, 533 U.S. 194 (2001), the Supreme Court mandated that first, a court must decide whether the facts that a plaintiff has shown make out a violation of a constitutional right, and then second, the court must decide whether the right at issue was "clearly established" at the time of the defendant's alleged misconduct. *Id.* at 201.  Subsequently, in *Pearson v. Callahan*, 555 U.S. 223 (2009), the Supreme Court ruled that courts are permitted to exercise their discretion in determining which of the two prongs should be addressed first.

Here, the right to be free from the use of excessive force under the Fourth Amendment has long been clearly established.  *Green v. Montgomery*, 219 F.3d 52, 59 (2d Cir. 2000); *Carey v. Maloney*, 480 F. Supp. 2d 548, 556 (D.Conn. 2007).

However, Delgado would be entitled to qualified immunity if she made a reasonable mistake about the amount of force required.  As noted above, there are genuine issues of material fact in dispute that directly bear on the Court's analysis regarding the reasonableness of Delgado's use of force.  The parties dispute the length of time that Delgado had her firearm drawn and therefore there is a central factual dispute regarding the amount of force actually used.  In addition, the parties dispute whether Plaintiffs were recklessly driving and therefore there is a central factual dispute regarding the circumstances surrounding the use of force.  If Plaintiffs were recklessly driving and thereby imminently endangering the lives of other motorists, a reasonable juror could conclude that Delgado's use of force was reasonable.   Where, as here, facts material to the qualified immunity analysis are in dispute, summary judgment is not appropriate. *Warren v. Williams*, No. Civ.A. 304CV537, 2006 WL 860998, at *33 (D.Conn. March 31, 2006) (finding that "[w]hile the defendants are entitled to qualified immunity if they made a reasonable mistake about the amount of force required by the situation, given the degree to which factual disputes exist regarding the type and amount of force used, as well as the circumstances surrounding the use of force, the court cannot conclude, on summary judgment, that the defendants are entitled to qualified immunity.");  See *Hemphill v. Schott*, 141 F.3d 412, 418 (2d Cir. 1998) ("summary judgment based either on the merits or on qualified immunity requires that no dispute about material factual issues remain"); *Thomas v. Roach*, 165 F.3d 137, 143 (2d Cir. 1999) ("Summary judgment on qualified immunity is not appropriate when there are facts in dispute that are

material to a determination of reasonableness.").  The Court is therefore unable to conclude on summary judgment that Delgado is entitled to qualified immunity.

Conclusion

Based upon the above reasoning, the Defendant's [Doc. #24] motion for summary judgment is DENIED IN PART and GRANTED IN PART.  The Plaintiffs' Fourth Amendment excessive force and intentional infliction of emotion distress claims shall go forward.  The rest of Plaintiffs' claims are hereby dismissed.

IT IS SO ORDERED.

_____/s/_____

Hon. Vanessa L. Bryant

United States District Judge

Dated at Hartford, Connecticut: June 23, 2011

25